## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| SANDRA PIKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:20-cv-374 |
| | ) | |
| PROCOLLECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff, SANDRA PIKE ("Plaintiff"), by and through her attorneys, Walker McMullan, Attorneys, alleges the following against Defendant, PROCOLLECT, INC. ("Defendant"):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

2. Count II of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

3. Count III of Plaintiff's Complaint is based on the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, et seq. ("ADTPA").

### JURISDICTION AND VENUE

4. This court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1692k (FDCPA).

5. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

6.  This court has federal question jurisdiction because this case arises out of violations of federal law.  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7.  28 U.S.C. § 1367 grants this court supplemental jurisdiction over the state claim contained within because it is so related to the claim in the action within such original jurisdiction that it forms part of the same case or controversy

8.  Venue and personal jurisdiction in this district are proper because Defendant does or transacts business within this district, and a material portion of the events at issue occurred in this district.

**PARTIES**

9.  Plaintiff is a natural person residing in the City of Foley, Baldwin County, State of Alabama.

10. Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

11. Plaintiff allegedly owes a debt as that term is defined by 15 U.S.C. § 1692a(5).

12. Defendant is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

13. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

14. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

15. Plaintiff is, and at all times mentioned herein, a "person" as defined by § 8-19-3(5) of the ADTPA.

16. Defendant is, and at all times mentioned herein, a "person" as defined by § 8-19-3(5) of the ADTPA.

17. Defendant is, and at all times mentioned herein, engaged in "trade" or "commerce" as

defined by § 8-19-3(8) of the ADTPA.

18. Within the last year, Defendant attempted to collect a consumer debt from Plaintiff.

19. Defendant is a Texas business corporation and national debt collection agency headquartered in the City of Dallas, Dallas County, State of Texas.

20. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

21. When an unpaid, outstanding account is placed with Defendant it is assigned a reference number.

22. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

23. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

24. During the course of its attempts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

25. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

26. Defendant is attempting to collect a consumer debt from Plaintiff, allegedly owed by Plaintiff arising from unpaid rent.

27. The alleged debt at issue arises from transactions for personal, family, and household purposes.

28. In or around August 2019, Defendant began placing collection calls to Plaintiff on

Plaintiff's cellular telephone at 682-309-8068 in an attempt to collect the alleged debt.

29. Since Defendant began calling Plaintiff, Plaintiff has answered at least one of Defendant's collection calls and spoke with Defendant's collector.

30. During the above-referenced telephone conversation:

    a.  Plaintiff disputed the alleged debt; and

    b.  Plaintiff told Defendant's collector to stop calling Plaintiff and communicate with Plaintiff only by email.

31. Despite Plaintiff telling Defendant to stop calling Plaintiff, and disputing the alleged debt, Defendant continued to call Plaintiff unabated.

32. On September 18, 2019, Plaintiff's counsel sent a cease-and-desist letter to Defendant via U.S. First Class Mail and facsimile, which Defendant received.

33. Despite Defendant receiving a written cease-and-desist request from Plaintiff's counsel, Defendant continued to contact Plaintiff unabated in an attempt to collect on the alleged debt.

34. Defendant's above-referenced actions were an attempt to coerce Plaintiff into payment of the alleged debt.

35. The natural consequences of Defendant's actions was to unjustly condemn and vilify Plaintiff for her non-payment of the alleged debt.

36. The natural consequences of Defendant's statements and actions was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

37. The natural consequences of Defendant's actions was to cause Plaintiff mental distress.

38. Defendant's above-referenced conduct further affected Plaintiff in a personal and individualized way by causing Plaintiff to experience anger, stress, worry, frustration,

embarrassment, and emotional distress.

39. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

40. Defendant has never had Plaintiff's prior express consent to call her cellular telephone with an automatic telephone dialing system.

41. Even if Defendant somehow had Plaintiff's consent, such consent was revoked as described above.

42. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

43. Within four (4) years of Plaintiff filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiff's cellular telephone.

44. When Plaintiff answered Defendant's calls, she was sometimes greeted with "dead air" whereby no person was on the other end of the line.

45. When Plaintiff answered Defendant's calls, she was sometimes greeted by a message spoken by an artificial or pre-recorded voice.

46. Defendant also left Plaintiff voicemail messages spoken by an artificial or pre-recorded voice.

47. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

48. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

49. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

50. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

51. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

52. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

53. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

54. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

55. The dead air that the Plaintiff experienced on the calls that she received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

6

56. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a. Invading Plaintiff's privacy;
    b. Electronically intruding upon Plaintiff's seclusion;
    c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;
    d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and
    e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

57. Plaintiff fully incorporates and re-alleges paragraphs 1 through 56 as if fully set forth herein under Count I of Plaintiff's Complaint.

58. Defendant violated the FDCPA based on the following:

    a. Defendant violated § 1692c(a)(2) of the FDCPA when Defendant communicated with Plaintiff despite Plaintiff being represented by an attorney with regard to the alleged debt;

    b. Defendant violated § 1692c(c) of the FDCPA when Defendant communicated with Plaintiff despite receiving a written cease-and-desist request from Plaintiff's counsel;

    c. Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequence of which was to harass, oppress, and abuse in connection with the collection of an alleged debt when Defendant employed such debt collection tactics in an attempt to collect the alleged debt;

7

d.  Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number when Defendant continued to call Plaintiff after Plaintiff told Defendant to stop calling Plaintiff and after receiving a written cease-and-desist request from Plaintiff's counsel;

e.  Defendant violated § 1692e of the FDCPA by its use of any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendant engaged in, at least, the following discrete violations of § 1692e;

f.  Defendant violated § 1692e(2)(A) of the FDCPA by its false representation of the character and legal status of any debt when Defendant attempted to collect a debt from Plaintiff that Plaintiff disputed;

g.  Defendant violated § 1692e(10) of the FDCPA by using any false representation or deceptive means to collect or attempt to collect any debt when Defendant engaged in, at least, all of the other discrete violations of § 1692e alleged herein;

h.  Defendant violated § 1692g(a)(3) of the FDCPA by ignoring Plaintiff's oral dispute of the validity of the alleged debt and continuing to assume the validity of the alleged debt when Defendant employed coercive and harassing tactics in its attempts to collect the alleged debt despite Plaintiff's dispute of the alleged debt;

i.  Defendant violated § 1692g(b) of the FDCPA by engaging in collection activities and communication that overshadowed or was inconsistent with the disclosure of the consumer's right to dispute the debt when Defendant ignored Plaintiff's oral dispute of the alleged debt and employed coercive and harassing tactics in its attempts to collect the alleged debt despite Plaintiff's dispute of the alleged debt;

and

    j.    Defendant violated § 1692f of the FDCPA by using unfair or unconscionable means in connection with the collection of an alleged debt when Defendant engaged in all the misconduct alleged herein.

WHEREFORE, Plaintiff, SANDRA PIKE, respectfully requests judgment be entered against Defendant, PROCOLLECT, INC., for the following:

59. Statutory damages of $1,000.00 pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k;

60. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k; and

61. Any other relief that this Honorable Court deems appropriate.

**COUNT II:**
**DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT**

62. Plaintiff repeats and realleges paragraphs 1-56 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

63. Defendant's conduct violated the TCPA by:

    a.    Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice, without prior express consent and/or after revocation of such consent, in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, SANDRA PIKE, respectfully requests judgment be entered against Defendant, PROCOLLECT, INC., for the following:

    a.    As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every

9

violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

b. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

c. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

d. Any other relief that this Honorable Court deems appropriate.

## COUNT III
## DEFENDANT VIOLATED THE ALABAMA DECEPTIVE TRADE PRACTICES ACT

64. Plaintiff fully incorporates and re-alleges paragraphs 1 through 56 as if fully set forth herein under Count III of Plaintiff's Complaint.

65. Defendant's foregoing conduct violated the ADTPA as it was engaging in unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

WHEREFORE, Plaintiff, SANDRA PIKE, respectfully requests judgment be entered against Defendant, PROCOLLECT, INC., for the following:

66. Actual damages, or the sum of $100.00, whichever is greater, pursuant to § 8-19-10(a)(1) of the ADTPA;

67. Treble damages pursuant to § 8-19-10(a)(2) of the ADTPA;

68. Costs and reasonable attorneys' fees pursuant to § 8-19-10(a)(3) of the ADTPA; and

69. Any other relief that this Honorable Court deems appropriate.

DATED: July 28, 2020                      Respectfully submitted,
                                         WALKER MCMULLAN, ATTORNEYS

                              By: /s/ M. Brandon Walker
                                         M. Brandon Walker
                                       Walker McMullan, Attorneys
                                       242 West Valley Avenue, Suite 312
                                       Birmingham, AL 35209
                                       Tel: 205-417-2541
                                       brandon@walkermcmullan.com
                                       Attorney for Plaintiff

11